```
IN THE UNITED STATES DISTRICT COURT FOR THE
          EASTERN DISTRICT OF OKLAHOMA
```

CACY A. DOLLAR,                      )
                                     )
            Plaintiff,               )
                                     )
                                     ) Case No. CIV-20-151-RAW-KEW
                                     )
COMMISSIONER OF THE SOCIAL           )
SECURITY ADMINISTRATION,             )
                                     )
            Defendant.               )

## REPORT AND RECOMMENDATION

Plaintiff Cacy A. Dollar (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined she was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and the case REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairments are of such severity that he is not only unable to do his previous work

but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) (citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally, Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also*, *Casias*, 933 F.2d at 800-01.

## Claimant's Background

Claimant was 35 years old at the time of the ALJ's decision. She has a high school education and past relevant work as a screen printer helper, fast food worker, teacher aide, cashier, photographer, and receptionist. She alleges an inability to work beginning on September 28, 2016, due to limitations resulting from cognitive dementia, anxiety, depression, shoulder injury, and migraines.

## Procedural History

In September of 2017, Claimant filed an application for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act and an application for supplemental security income benefits pursuant to Title XVI (42

U.S.C. § 1381, *et seq*.) of the Social Security Act. Her applications were denied initially and upon reconsideration. On March 7, 2019, ALJ Elisabeth McGee conducted a hearing in Fort Smith, Arkansas, at which Claimant testified. On June 19, 2019, the ALJ entered an unfavorable decision. Claimant requested review by the Appeals Council, and on April 24, 2020, it denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made her decision at step five of the sequential evaluation. She determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform light work with additional limitations.

### Errors Alleged for Review

Claimant asserts the ALJ committed error by (1) excluding proven limitations from the RFC (with subparts), and (2) failing to perform a proper step-five determination.

### RFC Determination

In her decision, the ALJ found Claimant suffered from severe impairments of vertigo, mild cognitive impairment, anxiety, asthma, right shoulder rotator cuff tear with surgery and later right shoulder mild AC degenerative joint disease with arthroscopy

4

in March of 2018, prominent cluster B personality traits, and obesity. (Tr. 15). She determined Claimant could perform light work, except she could have no concentrated exposure to dust, fumes, or other pulmonary irritants, no moving mechanical parts, ladders, ropes, scaffolds, deep water, open flames, motor vehicles, crouching, or crawling. Claimant could engage in occasional overhead and all other reaching. She could perform simple instructions, tasks, and work-related decisions and have occasional interaction with supervisors and co-workers, but she was to have no interaction with the general public except incidental contact. (Tr. 16-17).

After consultation with a vocational expert ("VE"), the ALJ determined Claimant could perform the representative jobs of shipping and receiving weigher, cotton classer aide, and agricultural sorter, all of which the ALJ found existed in sufficient numbers in the national economy. (Tr. 24, 68-71). As a result, the ALJ concluded Claimant had not been under a disability since September 28, 2016, through the date of the decision. (Tr. 24-25).

Claimant contends the ALJ's RFC assessment is not supported by substantial evidence for several reasons. "[R]esidual functional capacity consists of those activities that a claimant can still perform on a regular and continuing basis despite his or her physical limitations." *White v. Barnhart*, 287 F.3d 903, 906

5

n.2 (10th Cir. 2001). A residual functional capacity assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." Soc. Sec. Rul. 96-8p, 1996 WL 374184, *7 (July 2, 1996). The ALJ must also discuss the individual's ability to perform sustained work activities in an ordinary work setting on a "regular and continuing basis" and describe the maximum amount of work-related activity the individual can perform based on evidence contained in the case record. *Id*. She must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id*. However, there is "no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012).

Claimant first asserts that the evidence supported a limitation in the RFC concerning Claimant's ability to manipulate and grasp objects with her right upper extremity. She maintains that the ALJ improperly considered the opinion of consultative examiner Emily Grew-Nelson, D.O., when deciding not to include such limitations in the RFC.

The ALJ specifically considered the evidence regarding Claimant's right upper extremity tremor. Claimant was first assessed with a right upper extremity resting and intention tremor

in 2013, which improved with medication. (Tr. 17, 404-31). The ALJ noted that in January of 2018, Claimant complained that her tremor was worsening. Examination findings included "no significant tremor, with the physician noting that there was little change in Claimant's familial tremor on exam, but Claimant complained of having "a little more difficulty at home[.]" (Tr. 19, 618-20). By January of 2019, Claimant continued to complain of worsening tremor with declining function. Physical examination was generally normal, but it was noted Claimant had "mild to moderate right greater than left intention tremor with some degree of postural tremor[.]" (Tr. 20, 692-95).

    The ALJ also discussed in detail the consultative examination by Dr. Grewe-Nelson from June 9, 2018. Claimant reported to Dr. Grewe-Nelson that she had suffered from the tremor since 2013 and treatment with medication "somewhat help[ed]." Claimant complained of symptoms, including decreased mobility and muscle spasms. Upon examination, Claimant's muscle bulk and tone were within normal limits. Her muscle strength was 5/5 on the left in all areas (deltoids, biceps, triceps, wrist flexion, wrist extension, finger abduction, and hand grip) and 4/5 on the right. Her sensory examination was normal, except for decreased sensation of three fingers on the right hand. Dr. Grewe-Nelson indicated Claimant could effectively oppose the thumb to fingertips, could manipulate small objects on the left but not the right, and could effectively

7

grasp tools such as a hammer on the left but not the right. In the narrative portion of her report, however, Dr. Grewe-Nelson stated that "the [C]laimant's hands and fingers appeared normal[,]" and she "generally observed the [C]laimant to be able to button and unbutton a shirt, pick up and grasp a pen and write a sentence[,] and lift, carry and handle personal belongings." She also noted Claimant "could dress and undress adequately well, was cooperative and gave good effort during the examination." (Tr. 22, 663-71).

As part of her argument that the ALJ failed to properly consider her right upper extremity impairment in her hands and arms in the RFC, Claimant contends the ALJ improperly addressed Dr. Grewe-Nelson's opinion. The medical opinion evidence in the case is subject to evaluation pursuant to 20 C.F.R. §§ 404.1520c, 416.920c. Under the revised regulations, the ALJ does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)[.]" 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, she must "articulate" in her decision "how persuasive [she] find[s] all of the medical opinions and all of the prior administrative medical findings in [the] case record" by considering a list of factors. 20 C.F.R. §§ 404.1520c(b), 416.920c(b). The factors include: (i) supportability, (ii) consistency, (iii) relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining

8

relationship), (iv) specialization, and (v) other factors that tend to support or contradict a medical opinion or prior administrative finding (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements."). 20 C.F.R. §§ 404.1520c(c), 416.920c(c).

The most important factors are supportability and consistency, and the ALJ must explain how both were considered. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Generally, the ALJ is not required to explain how the other factors were considered. *Id.* However, if the ALJ finds "that two or more medical opinions or prior administrative findings about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, [she] will articulate how [she] considered the other most persuasive factors in paragraphs (c)(3) through (c)(5)[.]" 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

An ALJ continues to have the duty to evaluate every medical opinion in the record regardless of its source. *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004). She may not "pick and choose among medical reports, using portions of evidence favorable to [her] position while ignoring other evidence." *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004), citing *Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984). If she rejects an

opinion completely, the ALJ must give "specific, legitimate reasons" for doing so. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (internal citations omitted). An ALJ's rationale must be "sufficiently specific" to permit meaningful appellate review. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).

The ALJ considered Dr. Grewe-Nelson's opinions regarding Claimant's right upper extremity hand and arm impairments in detail, stating specific reasons for how she considered the evidence. She pointed out some "clarity issues" with how Dr. Grewe-Nelson characterized Claimant's manipulative abilities, noting that although she made findings that Claimant suffered some sensory loss and difficulty with manipulating small objects, Dr. Grewe-Nelson also included in her report that she observed Claimant buttoning and unbuttoning her shirt, picking up and grasping a pen, writing a sentence, and carrying and handling her personal belongings. The ALJ found Dr. Grewe-Nelson's direct observation of Claimant's abilities more persuasive than a "yes or no check the box answer." (Tr. 22).

This Court finds that the ALJ properly considered Dr. Grewe-Nelson's opinion and explained why she found certain portions unpersuasive. There is no error in the ALJ's RFC determination regarding Claimant's tremors in her upper extremities, particularly her right arm and hand.

Claimant also contends that her shoulder impairment is much more limiting than the ALJ included in the RFC assessment. The ALJ discussed the evidence regarding Claimant's right shoulder impairment in her decision. She gave a detailed history of Claimant's treatment and surgery on her right shoulder, resulting from an injury Claimant suffered in 2016 while at work. (Tr. 18, 506-13, 554-55, 463-69, 484-95, 657-58). She discussed that in September of 2017, Claimant was advised to continue her physical therapy and to lift no more than twenty pounds with the right upper extremity. (Tr. 19, 478-79). By February of 2018, an MRI of Claimant's right shoulder revealed "mild AC joint degenerative changes," but it did not show any evidence of a current labral tear. (Tr. 19, 651). Claimant underwent a shoulder arthroscopy in March of 2018, and six weeks after the procedure, she exhibited some limitation in motion, but her follow-up exam was mostly normal. (Tr. 19, 649-50). Regarding Claimant's shoulder impairment, the ALJ also considered the opinions of consulting physician Dr. Grewe-Nelson and the opinions of the state agency reviewing physicians. (Tr. 22). She found the opinions persuasive, noting however, that based on the medical evidence at the hearing level she viewed Claimant as even more limited, and therefore included limitations in the RFC for only "occasional right overhead and all other reaching." (Tr. 22).

This Court finds the ALJ properly considered Claimant's shoulder impairment and included limitations in the RFC determination supported by the medical evidence.

Claimant next argues that the ALJ failed to properly account for her mental and cognitive limitations in the RFC. She was examined by Theresa Horton, Ph.D., on November 28, 2017. After her examination of Claimant, Dr. Horton diagnosed Claimant with mild cognitive impairment, unspecified anxiety disorder, and prominent cluster B personality traits. Claimant was "capable of understanding, remembering and managing most simple and complex instructions and tasks, though likely does benefit from maintaining lists[.]" Claimant might "not manage the tasks as well as they become increasingly complex . . . [and] may not adjust as well in settings that are fast paced and/or densely populated." (Tr. 606-09). The ALJ discussed Dr. Horton's opinion in the decision, finding it to be persuasive, and included mental limitations in the RFC limiting Claimant to "simple instructions, tasks, and work[-]related decisions[,]" and also included mental limitations related to Claimant's interaction with others. (Tr. 17, 22-23). She did not, however, make any findings regarding Dr. Horton's conclusion that Claimant should be allowed to consult lists to perform her daily work duties, and she did not question the VE about whether Claimant would be able to perform work with such a limitation. On remand, the ALJ should specifically address

12

Dr. Horton's opinion that Claimant should be allowed to utilize lists when performing work activity.

### Evaluation of Symptoms and Step Five Determination

Claimant further contends the ALJ failed to perform a legitimate analysis of her subjective complaints and that the ALJ's step-five determination is improper. Because the evaluation of Claimant's symptoms is tied closely to the RFC determination, after properly considering the opinion of Dr. Horton in conjunction with the other evidence of record, the ALJ should reconsider her assessment of Claimant's subjective symptoms on remand. *See Poppa v. Astrue*, 569 F.3d 1167, 1171 (10th Cir. 2009) ("Since the purpose of the [symptom] evaluation is to help the ALJ access a claimant's RFC, the ALJ's [symptom evaluation] and RFC determinations are inherently intertwined."). Moreover, because the ALJ's consideration of Dr. Horton's opinion may result in further limitations in the RFC, on remand, the ALJ should reassess at step five what work, if any, Claimant can perform.

### Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of the Social Security Administration should be REVERSED and the case REMANDED for further proceedings. The parties are herewith given fourteen

(14) days from the date of the service of this Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 18th day of August, 2022.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE